G. L. RAMSEY a/c THE JUVENILE MFG. CO., INC. v. UNITED STATES

No. 7978.—

Entry Nos. 302–S; 303–S.

(Decided April 2, 1951)

*Philip Stein* (*Philip Stein* and *Marjorie M. Shostak* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Harold L. Grossman*, special attorney). for the defendant.

COLE, Judge: Dress fronts for infants' dresses, that had been produced in this country and shipped to Mexico for the purpose of ornamenting by embroidery or other fancy work, designs stamped thereon by the domestic manufacturer, were imported through the port of San Antonio, Tex.

Plaintiff made entry at values that embraced all elements of cost accruing in the United States, as well as the value or cost of labor, the only item of expense, incurred in Mexico, and in doing so sought to apply the provisions of paragraph 1615 (g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1201, par. 1615 (g)), reading as follows:

Any article exported from the United States for repairs or alterations may be returned upon the *payment of a duty upon the value of the repairs or alterations* at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph. [Italics mine.]

The appraiser's action, advancing the entered values, is explained in stipulations of fact and in the oral testimony of the appraiser who appeared as plaintiff's witness.

Cost of production, section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)), was the basis for appraisement of all the merchandise covered by the two shipments in question. In adopting such statutory value, the appraiser made no effort to determine whether there existed for these articles a foreign, an export, or United States value, as required under the provisions of section 402 of the Tariff Act of 1930 (19 U. S. C. § 1402), but arbitrarily accepted a letter or circular (plaintiff's exhibit 8) as a ruling by the Bureau of Customs to make statutory cost of production the basis for appraisement of all importations of American-made merchandise previously exported for repairs or alterations. This action by the appraiser is of such determinative consequence, we discuss it further.

The circular or letter referred to, bore date June 25, 1945, approximately 3 years before the importations in question, and was addressed to "The Director, Customs Information Exchange" (copies having been sent to the United States appraisers of merchandise at Buffalo and at Detroit). It discusses certain unfinished abrasive wheels and steel rings, manufactured by the Carborundum Co. of Niagara Falls, N. Y., and shipped to a subsidiary in Canada for further processing and return to the American corporation. The principal matter under consideration was determination of the "manufacturer" for tariff purposes, because, as the letter states, "The appraising officers concerned are in agreement that cost of production is the statutory basis of value applicable * * *." There is nothing about the letter from which to draw even an inference that it should be considered as a general directive applicable to all merchandise made in the United States and sent to a foreign country for repairs or alterations. Fur-

thermore, to attribute to the paper an interpretation given by the appraiser would be to assert a willingness—certainly never intended therein—to evade clear and unambiguous statutory provisions, section 402, *supra*. The letter is limited in scope, relating only to the particular transaction mentioned. Its contents have no bearing on the present issue.

Accordingly, I find the appraisements to be erroneous, thereby destroying their statutory presumption of correctness. *Carey & Skinner, Inc.* v. *United States*, 12 Cust. Ct. 352, Reap. Dec. 5975. Such conclusion removes the necessity for discussing the differentiation made by the appraiser in finding values wherein he distinguished the dress fronts with an ornamental area of greater than 2″ x 3″, from those whose ornamentation was less than 2″ x 3″ in area, because appraisement of both categories was based on a false premise, as hereinabove set forth.

The parties agree that ornamenting these dress fronts in Mexico exceeded the realm of "repairs," thus bringing the particular issue before the court to the question whether such work is within the term "alterations," as used in amended paragraph 1615 (g), *supra*.

Defendant concedes that the provisions of law and regulations issued pursuant thereto, necessary to invoke said paragraph, were complied with by plaintiff. The pertinent regulations, section 10.8 (*a*) of the Customs Regulations of 1943, provide that—

For the purposes of paragraph 1615 (g), Tariff Act of 1930, as amended, the term "repairs or alterations" shall be held to mean any restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new or different article.

The scope of the word "alterations," given in the cited regulations, is consistent with the common meaning thereof as found in the following recognized dictionary authorities.

Funk & Wagnalls New Standard Dictionary defines "alteration" as: "The act or process of altering, or the state of being altered; change or modification." The same authority defines "alter" in this way: "To change entirely or materially; change for something else, vary the arrangement of; transform, exchange."

Webster's New International Dictionary gives "alteration" this meaning: "Act of altering, or state of being altered. The result of altering; a modification or change made in altering anything." "Alter" is defined in the same volume as follows: "To change in one or more respects, but not entirely; to make (a thing) different without changing it into something else; to vary; to modify; sometimes, to change in any way."

Government counsel, in their brief, argue this way:

* * * The work done in Mexico did not alter the garment; it created the garment. When the garment left the United States it was merely a dress front in shape, totally unfit for commerce; when it was returned, embroidered, tucked,

pleated, etc., it was in full fact a dress front suitable for introduction into a complete, salable dress. * * *

This contention is not consistent with stipulated facts which very definitely show that dress fronts, as articles, were shipped to Mexico and returned therefrom, "the only qualification being that when returned from Mexico the dress-fronts were ornamented by reason of the work performed upon them in Mexico." In other words, positive proof, introduced within an agreed set of facts, establishes that dress fronts were exported and the same articles were imported with some degree of ornamentation added to designs that had been stamped thereon prior to exportation for alterations. Such undisputed facts are sufficient to sustain plaintiff's contention.

The work done in Mexico on the dress fronts in question constituted "alterations," within the meaning of the term as used in paragraph 1615 (g), as amended, *supra*, and the value therefor is established by plaintiff's uncontradicted testimony coupled with stipulated facts. Accordingly, I hold export value, section 402 (d) of the Tariff Act of 1930 (the foreign value being no higher), in the principal market of Nuevo Laredo, Mexico, at prices that did not vary according to quantities purchased, to be the proper basis for appraisement of the dress fronts in question, and that such statutory values are as follows: For the merchandise covered by reappraisement 170334–A, $5.75 per dozen, and for the different lot numbers included in reappraisement 170335–A, lot No. 1440, $2.25 per dozen; lot No. 1470, $2.25 per dozen; lot No. 1472, $2.15 per dozen; lot No. 1476, $1.80 per dozen. Judgment will be rendered accordingly.

Counsel for the respective parties have discussed several cases in their elaborate and well-prepared briefs. All of them have been carefully considered in connection with the different theories presented, but in view of the approach taken and disposition made herein, it is deemed unnecessary to outline or review any of the citations.